**Miriam RAMIREZ, Plaintiff,**

v.

**Anabelle RODRIGUEZ,
et al., Defendants.**

**No. CIV.03–1284 HL.**

United States District Court,
D. Puerto Rico.

March 31, 2005.

Luis P. Costas–Elena, Brown & Ubarri, San Juan, PR, for Plaintiff.

Carlos Del–Valle–Cruz, Department of Justice, Eduardo A. Vera–Ramirez, Landron & Vera LLP, San Juan, PR, Ivette Aponte–Nogueras, Ave. Degetau, Caguas, PR, for Defendants.

## OPINION AND ORDER

LAFFITTE, District Judge.

Plaintiff Miriam J. Ramírez[1] (hereinafter "Ramirez") brought this action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief against the defendant[2] for alleged violations of her rights under the First, Fifth and Fourteenth Amendments to the United States Constitution. (*See* Docket No. 1, Verified Complaint). At this juncture of the proceedings, however, the only remaining issue is whether the Court can entertain plaintiff's declaratory judgment claim and invalidate Article 261 of the Puerto Rico Penal Code, 33 P.R. Laws Ann. § 4522, better known as the Riot Act.

Pending before the Court is plaintiff's motion for summary judgment (Docket No. 13), and defendant's motion to dismiss (Docket No. 14)[3]. Defendant filed a reply to plaintiff's motion for summary judgment renewing its arguments set forth in the previous motion to dismiss (Docket No. 28).

## *FACTUAL BACKGROUND*

The facts of the case are taken from plaintiff's verified complaint and are set forth in the light most favorable to Ramírez in accordance with Federal Rule of Civil Procedure 12(b)(6). Plaintiff Ramírez, a member of the New Progressive Party ("NPP"), was an elected member of the Puerto Rico Senate at the time of the events relative to this complaint. Plaintiff Ramírez and several prominent leaders of the NPP party were charged by the Puerto Rico Department of Justice for an alleged violation to Article 261 of the Puerto

Rico Penal Code in response to an incident that occurred on June 20, 2002, the details of which are set forth below.

Sometime before June 20, 2002, reporter Jorge Blanco from a local radio station, conducted an interview with attorney María Dolores Fernós (Fernós), who heads the Commonwealth's Office of the Women's Advocate ("OWA"), a governmental agency. Fernós was appointed to the post by former governor Sila M. Calderón, a member of the Popular Democratic Party. In the course of that interview, Fernós admitted that the OWA agency headquarters did not have a United States flag displayed alongside Puerto Rico's flag because, in her view, no law required her to do so.

On June 20, 2002, certain members of the Puerto Rico House of Representatives, who support the NPP gathered in San Juan. At that meeting, someone made a comment alluding to the aforementioned interview in which Fernós had said that she was refusing to display the U.S. flag at OWA headquarters. Thereafter it was suggested that the group take the U.S. flag to OWA headquarters and have it displayed alongside the Puerto Rico flag. Around mid-day, a number of NPP supporters, including plaintiff Ramírez, assembled on the north side steps of the Capitol building. Then NPP President, Carlos I. Pesquera ("Pesquera") arrived at the scene and joined the gathering. The group then began to walk toward the OWA headquarters, with Pesquera at the helm of the procession.

Once they arrived at the OWA's headquarters, the NPP supporters peaceably

---

**1.** Plaintiff Miriam Ramírez is a licensed physician.

**2.** The only remaining defendant at this point in the litigation is the former Secretary of Justice, Anabelle Rodríguez. The claims

against co-defendants Rubén Guzmán Torres, Jose M. De León Pérez were dismissed on March 8, 2004. (See Docket No. 21).

**3.** The Court denied this motion without prejudice. (Docket No. 22).

assembled at the entrance of the building. The entrance consisted of two side-by-side glass doors which lead to a vestibule and the building's public reception area. From the street, those gathered outside could see that, in fact, the OWA's public reception area had a Puerto Rico flag displayed, but not a United States flag.

The glass doors that led to the OWA building were locked from the inside. Several men stood inside the ground vestibule, leaning against the inside of the glass doors, and keeping them closed. When Pesquera arrived at the OWA entrance, he encountered Vanessa Rodríguez ("Rodríguez"), a spokeswoman for Fernós. Rodríguez was standing on the sidewalk outside OWA headquarters. The members of the news media present at the site gathered around Pesquera and Rodríguez and recorded their conversation.

Initially, Rodríguez told Pesquera that only he would be allowed to enter the OWA. Pesquera replied that he wished to meet with Fernós, and two of the women who walked with him, to discuss their interest in having the Untied States flag displayed alongside the Puerto Rico flag in the OWA's public reception area. After making some telephone calls, Rodríguez informed Pesquera that his request was unacceptable. Pesquera urged Rodríguez to try and obtain permission for them to enter the OWA. Rodríguez re-entered the building and later returned to the street, whereupon she resumed her conversation with Pesquera. At some point thereafter, one of the glass entrance doors leading to the OWA headquarters, was unlocked, and someone pulled Rodríguez back into the ground floor vestibule. The people on the inside then closed and locked the glass doors.

The NPP supporters gathered outside waited, with the expectation that they would be allowed to enter the OWA. Inside of the OWA building, OWA's personnel began to gather in the public reception area, in the staircase and stairwell leading to the reception area, and in the ground floor vestibule. The media representatives who were gathered outside the building, were pushing and shoving, jockeying for a position to observe and record the happenings. Also gathered outside were officers, of various ranks, of the Puerto Rico Police Department. Including, Wanda Rivera ("Commander Rivera"), who had arrived at the OWA entrance, to speak with Pesquera. Pesquera again expressed his desire to enter OWA and place the United States flag alongside the Puerto Rico flag. Commander Rivera made several calls on her cellular telephone. She was thereafter allowed to the enter the OWA, after which point the people on the inside again closed and locked the entrance glass door. When Commander Rivera re-emerged she informed Pesquera that Fernós insisted in denying entry to the building to place the United States flag in the public reception area.

Shortly after 3:00 p.m., Fernós announced that she would hold a press conference in her office and ordered that the members of the media be allowed to enter. Thereafter, the glass doors were unlocked and the members of the media were allowed to enter the building. Fernós then held a press conference. Upon its conclusion, the members of the media headed out the public reception area to exit the building.

Shortly after 5:00 p.m., the OWA's entrance doors were unlocked and opened. At that point, Pesquera and his followers went through the open door, into the OWA's ground vestibule, and began to make their way up the staircase towards the OWA's public reception area carrying the United States flag. OWA personnel tried to prevent Pesquera and others from

entering the OWA to place the United States flag alongside the Puerto Rico flag. People continued to enter the building as Pesquera tried to make his way up the staircase. During that time OWA personnel continued to prevent Pesquera and his followers form achieving their stated goal.

Plaintiff Ramírez asserts in her verified complaint, that she was swept by the crowd into the OWA's vestibule. She further asserts that during the entire incident she remained in the ground floor, next to the staircase. She also contends she held a man by the belt, later identified as Mr. Dixon Escalante, to prevent him form climbing over other people's heads on the edge of the staircase. Mr. Escalante allegedly turned back and struck plaintiff forcibly. In stark contrast no charges were filed against Escalante nor against anyone from the OWA, thereby raising the spectrum of selective prosecution.

As a result of the events of June 20th, criminal charges for a violation to Article 261 were brought against plaintiff Ramírez and several other prominent leaders of the NPP party. The charges against plaintiff Ramírez were dismissed for lack of probable cause on March 25, 2003 after a three-day hearing. Four high-ranking NPP leaders[4] were tried at a state court for alleged violations of Puerto Rico's Riot Act in a highly publicized trial and found not guilty of all charges by a jury.

### DISCUSSION

■ In her motion for summary judgment Ramírez challenges the constitutionality of Article 261 of the Puerto Rico Penal Code. Specifically, Ramírez asserts that she was selectively prosecuted under the aforementioned statute, in violation of

her First Amendment rights-namely her right to peaceful assembly and to voice her protest against the Calderón administration. Defendant, in turn, argues that plaintiff's claim should be dismissed given that they became moot when the charges against her were dropped for lack of probable cause.

■ Under Article III of the U.S. Constitution courts have no authority to decide questions that cannot affect the right of the litigants before them. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). In other words, "Article III prohibits federal courts from deciding 'moot' cases or controversies that is, those, in which the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *United States v. Reid*, 369 F.3d 619, 624 (1st Cir.2004) (citations omitted). Defendant argues, that this court lacks subject matter jurisdiction to entertain Ramírez's claim for declaratory judgment due to the fact that the criminal charges against plaintiff were dropped making this controversy moot. "Mootness problems may arise at any point in a proceeding. 'Even if an actual case or controversy exists at the inception of litigation, a case may be rendered moot (and, therefore, subject to dismissal) if changed circumstances eliminate any possibility of effectual relief.' " *United States v. Reid*, 369 F.3d at 624 (citing *Me. Sch. Admin. Dist. No. 35 v. Mr. & Mrs. R.*, 321 F.3d 9, 17 (1st Cir.2003)); see also *Mangual v. Rotger–Sabat*, 317 F.3d 45, 60 (1st Cir.2003).

The Court finds that the circumstances surrounding this case have changed dramatically. Not only were the charges against plaintiff Ramírez dismissed for

4. The high-ranking NPP leaders prosecuted in state court were: Carlos Ignacio Pesquera, the President of the NPP party; Leonides Díaz, former NPP President; Edwin Mundo, NPP legislator and member of P.R.'s House of Representatives; and Thomas Rivera Schatz, NPP's Election Commissioner.

lack of probable cause, but more importantly, the Calderón administration is no longer in power, and Ramírez is no longer an elected official.[5] In addition, the four other prominent NPP leaders who were prosecuted under the Riot Act, were all acquitted by a local jury in a highly publicized trial. Therefore, it seems highly improbable that the Puerto Rico Department of Justice will once again expose itself to public embarrassment and ridicule by selectively prosecuting public officials under the Riot Act for voicing their differences with the government. The Court, unlike the plaintiff, does not see this case as one "capable of repetition yet evading review." *See e.g., Méndez–Soto v. Rodríguez,* 306 F.Supp.2d 120, 124–25 (D.P.R.2004). Therefore, the Court finds that the factual and legal circumstances surrounding Ramírez's case have changed so dramatically that an opinion on the merits of Ramírez's claim would be merely advisory. The Court has no choice but to dismiss the case as moot.

### CONCLUSION

In view of the aforementioned, the Court hereby **DENIES** plaintiff Ramírez's Motion for Summary Judgment (Docket No. 13), and **GRANTS** defendants' Motion to Dismiss for lack of subject matter jurisdiction (Docket No. 14). Judgment dismissing this case shall be entered accordingly.

**IT IS SO ORDERED.**

5. In her summary judgment motion plaintiff Ramírez asserts that she is afraid to participate in unspecified activities challenging the policies of the Calderón administration for fear of being charged under the Riot Act. Plaintiff further alleges that she could faces sanctions, and even expulsion from the P.R. Senate if she were to be charged and prosecuted under the Riot Act. These generalized factual allegations are no longer plausible given that the Calderón administration is no longer in power, and Ramírez is no longer an elected official. Should the present PPD administration insists on prosecuting Dr. Ramírez for exercising her First Amendment rights under the U.S. Constitution she may file another claim.