# United States Court of Appeals

## For the First Circuit

No. 05-1798

MIRIAM J. RAMÍREZ,

Plaintiff, Appellant,

v.

ROBERTO SÁNCHEZ RAMOS, IN HIS CAPACITY AS
SECRETARY OF JUSTICE OF PUERTO RICO,*

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

Before

Selya, Lipez and Howard, Circuit Judges.

David W. Roman, with whom José Luis Ubarri and Brown & Ubarri
were on brief, for appellant.
Eduardo Vera Ramírez, with whom Roberto Sánchez Ramos,
Secretary of Justice, Salvador Antonetti Stutts, Solicitor General,
Eileen Landrón Guardiola, Courtney R. Carroll, and Landrón & Vera,
LLP were on brief, for appellee.

February 21, 2006

_____

*Pursuant to Federal Rule of Appellate Procedure 43(c)(2), we have
substituted Roberto Sánchez Ramos for his predecessor in office,
Anabelle Rodríguez.

**SELYA**, <u>Circuit Judge</u>.  Following her failed efforts to force an agency of the Puerto Rican government to display the American flag in its central office, plaintiff-appellant Miriam J. Ramírez found herself on the wrong end of criminal charges brought pursuant to the Riot Act, P.R. Laws Ann. tit. 33, § 4522.  Claiming that the Riot Act impermissibly infringed her First Amendment right to political expression and that the party in power was using it as a tool to harass political opponents, the plaintiff mounted a constitutional challenge.[1]  After the criminal charges were dropped, the district court determined that the plaintiff no longer had an adequate stake in the action and dismissed her constitutional claims as moot.  <u>Ramírez</u> v. <u>Rodríguez</u>, 389 F. Supp. 2d 143, 147 (D.P.R. 2005).  This appeal followed.

We conclude that the plaintiff lacked standing to bring a facial challenge to the Riot Act.  While she had standing to mount an as-applied challenge, that claim became moot upon the termination of the criminal charges.  Accordingly, we affirm the judgment below.

## I.  BACKGROUND

The plaintiff is a member of the New Progressive Party (NPP) and a former legislator.  In 2002, the NPP's main rival, the

---

[1]The First Amendment applies to the several states by operation of the Fourteenth Amendment.  <u>See</u> <u>44 Liquormart, Inc.</u> v. <u>Rhode Island</u>, 517 U.S. 484, 489 n.1 (1996).  Puerto Rico is, for this purpose, the functional equivalent of a state.  <u>See</u> <u>El Vocero de P.R.</u> v. <u>Puerto Rico</u>, 508 U.S. 147, 148 n.1 (1993).

Popular Democratic Party (PDP), controlled the Puerto Rican government. On June 20, 2002, after learning that a government agency, the Office of the Women's Advocate (OWA), was not displaying the American flag alongside the Puerto Rican flag, the plaintiff joined a group of NPP adherents who marched, flag in hand, to the OWA's headquarters in an effort to rectify the situation. The marchers were denied entry when they reached their destination. Carlos Pesquera, then the president of the NPP, met with OWA representatives to explain the group's objective. Pesquera's entourage waited outside in hopes that they would be allowed to enter the building and hoist the American flag. Over the course of the afternoon, the large crowd attracted attention from both the media and the police.

After many hours, the doors to the OWA's headquarters were finally unlocked. The plaintiff claims that she was swept inside when the crowd rushed to enter the ground-level vestibule. The influx did not proceed very far; OWA personnel used physical force to prevent the marchers from ascending the stairs to the reception area (where they wished to place the flag).

Throughout, the plaintiff remained on the ground floor, seeking refuge in a side stairwell. While waiting for the frenzy to abate, she grabbed a man to prevent him from climbing over peoples' heads as he attempted to ascend the staircase. The man

(later identified as an OWA hierarch) turned and struck her. The plaintiff subsequently left the building.

No one was arrested or charged on the date of the incident. In its aftermath, however, the Puerto Rico Department of Justice appointed an independent prosecutor (the Prosecutor). The Prosecutor secured affidavits stating that the plaintiff had (i) directed threatening gestures at OWA officials while awaiting ingress to the building and (ii) used physical force against an OWA official once she was inside. Armed with these affidavits, the Prosecutor filed criminal charges against the plaintiff under the Riot Act. The Prosecutor charged several other prominent NPP members for their roles in the incident. No charges were lodged against anyone from the OWA.

On February 6, 2003, a local court dismissed the charges against the plaintiff for want of probable cause. Later, however, the court agreed to reconsider its decision and scheduled a hearing for March 19, 2003. Shortly before the appointed date, the plaintiff filed suit in the United States District Court for the District of Puerto Rico. In that action, she sought to enjoin the pending prosecution and to secure a declaration of the Riot Act's unconstitutionality.

At this point, a few words of explanation are in order. The Riot Act defines the offense with which the plaintiff was charged as "[a] use of force or violence to disturb the public

peace, or any threat to use such force or violence," so long as that act is "accompanied by immediate power of execution" and is carried out "by two (2) or more persons, acting together and without authority of law." P.R. Laws Ann. tit. 33, § 4522. The plaintiff's constitutional challenge to this statute has two facets. First, she attacks the Riot Act on the ground that the government was using it selectively to prosecute NPP partisans for their lawful exercise of First Amendment freedoms. Second, she alleges that the Riot Act, on its face, is unconstitutionally vague, overly broad, and incompatible with Fourteenth Amendment protections (e.g., due process and equal protection). In this regard, the plaintiff complains that the Riot Act neither specifies what behavior constitutes a disturbance of the peace nor limits violations to those situations in which the interdicted conduct presents a clear and present danger of actual injury.

The defendants, government officials sued in their representative capacities, moved to dismiss the action based on Younger abstention principles. See Younger v. Harris, 401 U.S. 37 (1971). The district court prudently stayed proceedings pending the outcome of the criminal prosecution. That case terminated on March 25, 2003, when the local court reaffirmed its earlier dismissal of the charges against the plaintiff for want of probable cause.

-5-

In short order, the district court jettisoned the plaintiff's claim for injunctive relief as moot. The court simultaneously denied the defendants' motion to dismiss the federal action on Younger grounds. Neither of these determinations is at issue in this appeal.

On April 22, 2003, the plaintiff moved for summary judgment on her declaratory judgment claim. She argued that she retained a personal stake in the matter because, as an active NPP member, she intended to continue participating in activities critical of the PDP-controlled administration. Specifically, she explained that she planned to participate in the NPP's upcoming "march of indignation" and to continue exercising her rights of peaceful assembly and vocal protest. She worried that these activities might subject her to selective prosecution under the allegedly vague and overbroad language of the Riot Act. She also worried that her fear of future prosecution might, in turn, chill the free exercise of her First Amendment rights.

In response, the Secretary of Justice (the sole remaining defendant) cross-moved to dismiss the plaintiff's complaint on the ground that the entire case had become moot when the criminal charges were squelched. On March 31, 2005, the district court granted the defendant's motion. The court cited the following uncontested facts: (i) the criminal charges against the plaintiff had been dismissed; (ii) a general election had intervened and a

new administration (albeit one headed by a different PDP governor) was in power; (iii) the plaintiff's term of office had expired and she was no longer an elected official; and (iv) the other NPP leaders who had been charged under the Riot Act in connection with the flag incident had all been acquitted in a highly publicized trial. See Ramírez, 389 F. Supp. 2d at 146-47. The court found that these changed circumstances rendered it "improbable that the Puerto Rico Department of Justice [would] once again expose itself to public embarrassment and ridicule by selectively prosecuting public officials under the Riot Act for voicing their differences with the government." Id. at 147. Although it dismissed all that remained of the action, the court did not undertake separate analyses of the plaintiff's as-applied and facial challenges. This timely appeal ensued.[2]

## II. ANALYSIS

We review the district court's mootness determination de novo, accepting as true the material factual allegations contained in the complaint and drawing all reasonable inferences therefrom in the plaintiff's favor. See N.H. Right to Life Political Action Comm. v. Gardner, 99 F.3d 8, 12 (1st Cir. 1996).

---

[2]Effective May 1, 2005, the legislature recodified the Riot Act as Article 248 of the Puerto Rico Penal Code, P.R. Laws Ann. tit. 33, § 4876. Aside from altering the penalty for violations — a modification that is of no consequence to the plaintiff's constitutionality arguments — Article 248 is a verbatim recodification of Article 261. Thus, we do not distinguish between the two for purposes of this appeal.

It is beyond dispute that when a litigant wishes to pursue a claim in a federal court, justiciability principles require the existence of an actual case or controversy. See U.S. Const. art. III, § 2, cl. 1; see also Allen v. Wright, 468 U.S. 737, 750 (1984); Osediacz v. City of Cranston, 414 F.3d 136, 139 (1st Cir. 2005). To satisfy the case or controversy criterion, the party alleging the existence of jurisdiction (normally, the plaintiff) must possess a personal stake in the outcome of the litigation. City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983). This requirement "subsists through all stages of federal judicial proceedings, trial and appellate." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990).

The doctrine of standing measures whether a plaintiff has satisfied the "personal stake" requirement at the commencement of an action. See Baker v. Carr, 369 U.S. 186, 204 (1962). Thereafter, the doctrine of mootness measures whether the plaintiff's interest remains sufficient to justify continuing federal jurisdiction. See U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980). Given that dichotomy, mootness is aptly described as "the doctrine of standing set in a time frame." Id. (citation and internal quotation marks omitted).

In this instance, the plaintiff asserts that she has a personal stake sufficient to support the justiciability of both her as-applied (selective prosecution) claim and her facial challenge

to the constitutionality of the Riot Act. These two claims involve different justiciability standards. For that reason, we analyze them separately.

The difference between standing and mootness necessitates a further segmentation of our analysis. Thus, we first consider, as to each claim, whether the plaintiff carried her initial burden of establishing standing. We then proceed to a mootness inquiry if — and only if — that answer is in the affirmative. Cf. Warth v. Seldin, 422 U.S. 490, 498 (1975) (explaining that standing is a "threshold question in every federal case").

## A.  Standing.

Standing involves both constitutional imperatives and prudential considerations. Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, 454 U.S. 464, 471 (1982). An inquiry into standing must be based on the facts as they existed when the action was commenced. Mangual v. Rotger-Sabat, 317 F.3d 45, 56 (1st Cir. 2003).

To satisfy Article III's "personal stake" requirement vis-à-vis a statutory challenge, the plaintiff bears the burden of demonstrating that (i) she has suffered an actual or threatened injury in fact, which is (ii) fairly traceable to the statute, and (iii) can be redressed by a favorable decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Lewis, 494 U.S. at 477. Allegations of abstract injury are insufficient to make

out an injury in fact. Instead, the plaintiff "must show that he has sustained or is immediately in danger of sustaining some direct injury." Lyons, 461 U.S. at 101-02 (citations and internal quotation marks omitted). Moreover, she must show that the injury or threat of injury is both real and immediate. Id. at 102 (citations and internal quotation marks omitted).

In addition to these constitutional requirements, prudential considerations must be taken into account. In general — there are exceptions, but we need not discuss them here — prudential concerns require a plaintiff to show that she is seeking to protect her own legal rights (rather than those of a third party), that her complaint does not merely represent a generalized grievance, and that the complaint falls within the zone of interests protected by the law invoked. See N.H. Right to Life, 99 F.3d at 15.

Against this backdrop, we turn to the two claims at issue here.

1. **The As-Applied Challenge**. At the time the plaintiff sued, criminal charges were pending against her under the Riot Act. Because she was in immediate danger of sustaining harm, her as-applied claim satisfies the first prong of the constitutional standing inquiry. See Lyons, 461 U.S. at 101-02. This claim also clears the second and third hurdles of the constitutional test: her injury was directly traceable to the challenged conduct, and a

declaration of the Riot Act's invalidity would eliminate the threatened harm.

By the same token, the as-applied claim satisfies prudential prerequisites. The plaintiff is seeking to protect her own First Amendment freedoms; the allegedly selective prosecution crystallized in a particularized event (the institution of criminal charges); and aspects of the threatened injury (most particularly, the chilling of political expression) fall comfortably within the zone of interests that the First Amendment protects.

To say more would be to paint the lily. We hold, without serious question, that the plaintiff carried her burden of establishing initial standing to seek a declaratory judgment with respect to her as-applied claim.

**2.   The Facial Challenge**.   Although allegations of abstract injury are insufficient to satisfy the first prong of the Article III standing test, a litigant who brings a First Amendment challenge to the face of a statute need not actually violate the statute or suffer the prescribed penalty in order to establish an injury in fact.   Steffel v. Thompson, 415 U.S. 452, 459 (1974). Because the "conflict between state officials empowered to enforce a law and private parties subject to prosecution under that law is a classic 'case' or 'controversy' within the meaning of Art. III," Diamond v. Charles, 476 U.S. 54, 64 (1986), two other types of injury may in some situations constitute valid proxies.

-11-

The first occurs when a "plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute, and there exists a credible threat of prosecution." Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979). The second occurs when a plaintiff "is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences." N.H. Right to Life, 99 F.3d at 13. The plaintiff seeks to invoke these exceptions here.

However, there is a rub. Each of the exceptions requires a credible threat — as opposed to a hypothetical possibility — that the challenged statute will be enforced to the plaintiff's detriment if she exercises her First Amendment rights. Id. at 14. Consequently, "[a] party's subjective fear that she may be prosecuted for engaging in expressive activity will not be held to constitute an injury for standing purposes unless that fear is objectively reasonable." Id. The evidentiary threshold that must be crossed in order to establish a credible threat is modest, see, e.g., Virginia v. Am. Booksellers Ass'n, 484 U.S. 383, 392-93 (1988); Babbitt, 442 U.S. at 302, but it is real. We turn, then, to the question of whether the plaintiff's proffer passes muster.

In her filings, the plaintiff expressed her intention to participate in a march, peacefully assemble, and openly voice her opposition to the PDP regime. She asserted that she feared future

-12-

prosecutions under the Riot Act if she followed through on any or all of these intentions and worried that she might be dissuaded from exercising her First Amendment freedoms.

Because the plaintiff never stated an intention to engage in any activity that could reasonably be construed to fall within the confines of the Riot Act, she failed to satisfy even the relaxed standing requirements reserved for facial First Amendment challenges.  See Osediacz, 414 F.3d at 141 (suggesting that a "party mounting a facial challenge [must] at the very least desire[] or intend[] to undertake activity within the compass of the challenged statute").  Read straightforwardly, the Riot Act only criminalizes the "use of force or violence" or the "threat to use such force or violence."  P.R. Laws Ann. tit. 33, § 4522.  None of the activities in which the plaintiff has expressed a desire to engage — marching, peacefully assembling, and speaking out — involves force or violence.  Therefore, none of them is even arguably within the statute's reach.  Accordingly, the plaintiff lacks standing to pursue a declaration that the Riot Act is unconstitutional on its face.  See Osediacz, 414 F.3d at 141; N.H. Right to Life, 99 F.3d at 14.

To be sure, the plaintiff maintains that her fear is credible because the prosecutions following the flag incident warrant an inference that the PDP administration is overly eager to employ the Riot Act against NPP leaders.  Assuming, for argument's

sake, that such an inference reasonably can be drawn, there is an important distinction between the flag incident and the activities that the plaintiff lists as future pursuits. Even though the Riot Act charges against the plaintiff were ultimately found to be baseless, the Prosecutor had obtained evidence suggesting that the plaintiff had used force on that occasion. It is simply too much of a stretch to posit that the government's decision to prosecute a Riot Act charge when some evidence supports a "force or violence" finding indicates a willingness to prosecute entirely peaceful First Amendment expression. See United States v. Armstrong, 517 U.S. 456, 464 (1996) (explaining that "in the absence of clear evidence to the contrary, courts presume that [prosecutors will] properly discharge[] their official duties") (citation and internal quotation marks omitted). While the government's decision to prosecute the earlier case is relevant to the plaintiff's as-applied claim, it does not confer standing to bring a facial challenge where, as here, the plaintiff has stated no intention of engaging in similar conduct. The plaintiff has, therefore, failed to clear the evidentiary bar for establishing a credible threat of future prosecution. See N.H. Right to Life, 99 F.3d at 14; see also Osediacz, 414 F.3d at 141 (explaining that although "standing concerns are relaxed in certain facial challenges implicating the First Amendment, a litigant still must demonstrate that she

-14-

satisfies the constitutional minima essential to establish standing").

## B. **Mootness**.

As limned above, the plaintiff had initial standing to bring her as-applied challenge to the Riot Act, but not her facial challenge. Consequently, only the former claim engenders a mootness inquiry.

Article III considerations require that an actual case or controversy "must be extant at all stages of review, not merely at the time the complaint is filed." Steffel, 415 U.S. at 459 n.10. When, as now, a plaintiff has initial standing to bring a particular claim, a federal court is duty bound to dismiss the claim as moot if subsequent events unfold in a manner that undermines any one of the three pillars on which constitutional standing rests: injury in fact, causation, and redressability. See Goodwin v. C.N.J., Inc., ___ F.3d ___, ___ (1st Cir. 2006) [No. 04-2050, slip op. at 6] ("A case becomes moot if, at some time after the institution of the action, the parties no longer have a legally cognizable stake in the outcome."); Manqual, 317 F.3d at 60 ("If events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case.").

Despite their close family resemblance, there is a telltale distinction between the doctrines of standing and mootness. Whereas the party invoking federal jurisdiction bears

-15-

the burden of proving that she has standing, the party raising a mootness defense has the burden of establishing the facts necessary to sustain that defense. See Manqual, 317 F.3d at 61. To satisfy this burden, the challenger must show that, after the case's commencement, intervening events have blotted out the alleged injury and established that the conduct complained of cannot reasonably be expected to recur. See County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979); United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968). If it is sufficiently plain that intervening events have wiped the slate clean, the case has become moot.

We conclude that in this case the defendant has satisfied his heavy burden of showing that the plaintiff's as-applied claim is moot. The Puerto Rico court's "want of probable cause" determination eradicated the threatened injury that formed the centerpiece of the plaintiff's selective prosecution claim. The finality of that ruling makes it transparently clear that the plaintiff will not face future prosecution under the Riot Act for her participation in the flag incident (indeed, she has made no claim to the contrary). No more is exigible to establish mootness.

In an effort to parry this thrust, the plaintiff notes that there is an exception to the mootness bar for situations in which a claim is capable of repetition, yet evades review. See, e.g., S. Pac. Terminal Co. v. ICC, 219 U.S. 498, 515 (1911); Cruz

v. Farquharson, 252 F.3d 530, 534 (1st Cir. 2001). Here, however, the plaintiff's attempt to avail herself of this exception is unpersuasive.

The exception is applicable when "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149 (1975). The party who asserts continuing jurisdiction (here, the plaintiff) bears the burden of establishing both that the issue is capable of repetition and that, absent relaxation of the classic mootness rule, it will evade review. See Lawrence v. Blackwell, 430 F.3d 368, 371 (6th Cir. 2005); Video Tutorial Servs. v. MCI Telecomms. Corp., 79 F.3d 3, 6 (2d Cir. 1996). In the case at hand, the plaintiff has not satisfied her burden with respect to either requirement. We explain briefly.

First, there is nothing about Riot Act prosecutions in general that would routinely preclude defendants from litigating the constitutionality of the statute during the pendency of criminal proceedings. That the criminal proceedings here were short-circuited by the "want of probable cause" determination and thus proved to be of insufficient duration to allow the plaintiff to adjudicate her constitutional challenge to a conclusion does not change this calculus. It is the issue raised, not the particulars

of the plaintiff's claim, that is determinative.  In other words, the issue itself must systematically evade review in order for the exception to apply.  See Spencer v. Kemna, 523 U.S. 1, 18 (1998) (finding that due process challenge to parole revocation hearing did not qualify for the exception, even though the plaintiff's sentence expired before he could litigate his constitutional challenge, because the time between parole hearings and the expiration of criminal sentences is not always — or even typically — so short as to evade review); Horizon Bank & Trust Co. v. Massachusetts, 391 F.3d 48, 54 (1st Cir. 2004) (holding that claims evade review only when "the underlying facts are inherently temporary such that they will predictably have changed and foreclosed meaningful relief by the time the case has worked its way through the legal system").  On this basis, the plaintiff's as-applied claim cannot be said to evade review.

Second, the plaintiff has not alleged any intent to engage in future political expression involving the actual or threatened use of force or violence.  See supra Part II(A)(2).  Her allegations, therefore, do not support a reasonable anticipation that she herself will be exposed to further Riot Act prosecutions. This is vitally important because it is the original plaintiff, rather than some other party, who must bear the onus of repeated exposure to the challenged conduct in order to meet the "capable of repetition" standard.  See Marchand v. Dir., U.S. Prob. Office, 421

F.2d 331, 334 (1st Cir. 1970). Consequently, the plaintiff's as-applied claim has not been shown to be capable of repetition in the requisite sense.

## III. CONCLUSION

We need go no further. Because the plaintiff's expressive aspirations, as she describes them, do not give rise to a credible threat of future prosecution under the Riot Act, she lacked standing to mount a facial challenge to the statute. And while she had standing to bring an as-applied challenge, that claim became moot once the criminal charges against her vanished. Hence, the district court did not err in dismissing the action.

**<u>Affirmed</u>**.