# United States Court of Appeals
## For the First Circuit

No. 19-2236

NYDIA MERCEDES HERNÁNDEZ-GOTAY; FAUSTINO ROSARIO-RODRÍGUEZ; LUIS JOEL BARRETO-BARRETO; CARLOS QUIÑONES-FIGUEROA; LAURA GREEN,

Plaintiffs, Appellants,

CLUB GALLÍSTICO DE PUERTO RICO, INC.,

Plaintiff,

and

ASOCIACIÓN CULTURAL Y DEPORTIVA DEL GALLO FINO DE PELEA; ÁNGEL MANUEL ORTIZ-DÍAZ; JOHN J. OLIVARES-YACE; ÁNGEL LUIS NARVÁEZ-RODRÍGUEZ; JOSÉ MIGUEL CEDEÑO,

Plaintiffs,

v.

UNITED STATES; UNITED STATES DEPARTMENT OF AGRICULTURE; SONNY PERDUE, Secretary of the Department of Agriculture;[*] UNITED STATES DEPARTMENT OF JUSTICE; JEFFREY A. ROSEN, Acting Attorney General;[**] DONALD J. TRUMP, President,

Defendants, Appellees.

---

[*] It appears that appellants have misspelled the Secretary's name, an error which is reflected in their briefing and on the docket. The Clerk of Court shall amend the case caption to reflect the correct spelling as used in this opinion.

[**] Pursuant to Fed. R. App. P. 43(c)(2), Acting Attorney General Jeffrey A. Rosen has been substituted for former Attorney General William P. Barr as appellee.

No. 20-1084

ASOCIACIÓN CULTURAL Y DEPORTIVA DEL GALLO FINO DE PELEA; ÁNGEL MANUEL ORTIZ-DÍAZ; JOHN J. OLIVARES-YACE; ÁNGEL LUIS NARVÁEZ-RODRÍGUEZ; JOSÉ MIGUEL CEDEÑO,

Plaintiffs, Appellants,

and

CLUB GALLÍSTICO DE PUERTO RICO, INC.; NYDIA MERCEDES HERNÁNDEZ-GOTAY; FAUSTINO ROSARIO-RODRÍGUEZ; LUIS JOEL BARRETO-BARRETO; CARLOS QUIÑONES-FIGUEROA; LAURA GREEN,

Plaintiffs,

v.

UNITED STATES; UNITED STATES DEPARTMENT OF AGRICULTURE; SONNY PERDUE, Secretary of the Department of Agriculture; UNITED STATES DEPARTMENT OF JUSTICE; JEFFREY A. ROSEN, Acting Attorney General; DONALD J. TRUMP, President,

Defendants, Appellees.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, Jr., U.S. District Judge]

———————————

Before

Howard, Chief Judge,
Lynch and Barron, Circuit Judges.

———————————

Edwin Prado-Galarza and María A. Domínguez, with whom Rafael Ojeda, Félix Román Carrasquillo, and DMRA Law LLC were on briefs, for appellants.
Jeffrey Bossert Clark, Sr., with whom Ethan P. Davis, Acting Assistant Attorney General, W. Stephen Muldrow, United States Attorney, Abby C. Wright, Attorney, Appellate Staff Civil Division, and John S. Koppel, Attorney, Appellate Staff Civil Division were on brief, for appellees.
Isaías Sánchez-Báez, Solicitor General of Puerto Rico, and

Carlos Lugo-Fiol on brief for the Commonwealth of Puerto Rico, amicus curiae.

Jorge Martínez-Luciano, Emil Rodríguez-Escudero, and M.L. & R.E. Law Firm on brief for the Puerto Rico Association of Mayors, amicus curiae.

Ana Maria Hernandez Marti and Jessica L. Blome on brief for Animal Wellness Action, Animal Wellness Foundation, and the Center for a Humane Economy, amici curiae.

---

January 14, 2021

---

**LYNCH**, **Circuit Judge**.   Plaintiffs in these consolidated cases challenge the constitutionality of Section 12616 of the Agriculture Improvement Act of 2018 ("Section 12616"), which bans the "sponsor[ship]" and "exhibit[ion]" of cockfighting matches in Puerto Rico.   Pub. L. No. 115-334, § 12616, 132 Stat. 4490, 5015-16 (codified as amended at 7 U.S.C. § 2156).   Plaintiffs argue that the law exceeds Congress's Commerce and Territorial Clause powers and violates their First Amendment and Due Process rights. We affirm the district court's decision and hold that Section 12616 is a valid exercise of Congress's Commerce Clause power and does not violate plaintiffs' individual rights.[1]

## I. Background

On appeal from the grant of the government's motion for summary judgment, we read the facts in the light most favorable to the plaintiffs.   Stamps v. Town of Framingham, 813 F.3d 27, 30 (1st Cir. 2016).

Cockfighting is "the sport of pitting gamecocks to fight and the breeding and training of them for that purpose." Cockfighting, Britannica, https://www.britannica.com/sports /cockfighting (last visited Dec. 17, 2020).   The birds are bred to

---

[1]    We acknowledge and thank the amici curiae for their submissions in this case.   The Puerto Rico Association of Mayors and the Commonwealth of Puerto Rico filed amicus curiae briefs in support of appellants.   Animal Wellness Action, Animal Wellness Foundation, and the Center for a Humane Economy submitted an amicus curiae brief in support of the government.

fight, are typically armed with steel spurs, and fight until one of the birds dies or is so injured that it can no longer fight. The Cockfight: A Casebook, at vii (Alan Dundes ed., 1994). The fights may end in a few minutes or go on as long as half an hour. Id. Cockfighting was banned in Puerto Rico from 1898 to 1933, and has since been heavily regulated under local Puerto Rico law. See P.R. Laws Ann. tit. 15 §§ 301 et seq.

In 1976, Congress amended the Animal Welfare Act ("AWA") to ban "animal fighting venture[s]," now defined as "any event, in or affecting interstate or foreign commerce, that involves a fight conducted . . . between at least 2 animals for purposes of sport, wagering, or entertainment." 7 U.S.C. § 2156(f)(1); Animal Welfare Act Amendments of 1976, Pub. L. No. 94-279, 90 Stat. 417, 421-22 (codified as amended at 7 U.S.C. § 2156). Those 1976 amendments contained an exception allowing fights between "live birds" which took place in any state where such fights were allowed under state law. Animal Welfare Act Amendments of 1976 § 17. Puerto Rico is treated as a state under the AWA. 7 U.S.C. § 2156(f)(3).

Congress has amended the animal fighting venture prohibition several more times. As of 2018, before the passage of the law at issue in this case, Congress had banned attendance at all animal fighting ventures -- including those in Puerto Rico and other jurisdictions which still allowed cockfighting -- and the "[b]uying, selling, delivering, possessing, training, or

- 5 -

transporting" of animals for the purpose of having the animal participate in an animal fighting venture.  7 U.S.C. § 2156(a)(2), (b) (2018).

In 2018, Congress passed Section 12616, which removed the remaining exception that allowed individuals to "[s]ponsor[] or exhibit[]" cocks in fights if allowed under local law and if they lacked knowledge that the cocks were moved in interstate commerce for purposes of cockfighting.  See Section 12616(a); 7 U.S.C. § 2156.  It also closed an exception which had allowed the use of interstate mail or services to advertise or promote cockfights taking place in states which permitted cockfighting. See Section 12616(b); 7 U.S.C. § 2156(c); Farm Security and Rural Investment Act of 2002, Pub. L. No. 107-171 § 10302, 116 Stat. 134, 492.

The sponsors of Section 12616 explained that prohibiting cockfighting would "move to end the cruelty of animal fighting," "protect . . . communities from associated crimes such as illegal drug dealing and human violence," and "safeguard against the spread of diseases in poultry such as avian flu, since birds used in cockfighting are particularly vulnerable."  Further, "[a]fter a 2002 outbreak of exotic Newcastle disease in the U.S., which cost taxpayers nearly $200 million and the poultry industry many millions more, the USDA implicated cockfighting as a culprit in spreading the disease."

- 6 -

## II. Procedural History

On May 22 and August 1, 2019, plaintiffs filed two suits to enjoin the enforcement of Section 12616.[2] The cases were consolidated by the district court on August 5, 2019.

Plaintiffs asserted a number of claims, including that Section 12616 violated their First Amendment and Due Process rights, and that Congress exceeded its powers under the Commerce and Territorial Clauses. Club Gallístico de P.R. Inc. v. United States, 414 F. Supp. 3d 191, 201 (D.P.R. 2019). The plaintiffs lodged both facial and as-applied pre-enforcement challenges to the statute. Id. at 200.[3]

The government asserted that plaintiffs did not have standing to challenge the portions of the animal fighting venture ban that were unchanged by Section 12616.[4] Id. at 203.

---

[2] Plaintiffs were individuals and a corporation which own cockfighting rings; individuals who breed, own, or invest in birds; individuals who work for cockfighting arenas; an artisan who crafts cockfighting-inspired art to be sold across state lines; and a cultural association dedicated to "preserving the tradition, culture, and economic benefits of cockfighting."

[3] Any facial challenge fails because the statute has "plainly legitimate sweep." Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 (2008). Therefore, we address only the as-applied challenge.

[4] On appeal, plaintiffs have dropped their claims that Section 12616 violates the anti-commandeering doctrine, that Section 12616 is a Bill of Attainder, that Section 12616 is inapplicable to Puerto Rico under the Puerto Rico Federal Relations Act, that Section 12616 violates the Takings Clause, and that Section 12616 violates their right to travel. Club Gallístico de P.R. Inc., 414 F. Supp. 3d at 201. The district court rejected

The parties filed cross-motions for summary judgment. Id. at 201. The district court granted the government's motion and denied plaintiffs' motion. Id. at 202.

The district court first held that the plaintiffs had "standing to challenge the constitutionality of Congress' extension of the animal fighting prohibition to the Commonwealth of Puerto Rico and those provisions that have existed prior to Section 12616's approval." Id. at 204.

The district court then concluded that Section 12616 was a valid exercise of Congress's Commerce Clause and Territorial Clause powers. Id. at 204-08. It next held that cockfighting is not expressive conduct and so is unprotected by the First Amendment, and that Section 12616 did not violate plaintiffs' right of free association because it does not actually restrict association. Id. at 209-10. The district court rejected the substantive Due Process claim because there is no fundamental right to cockfighting and there was a rational basis for passing Section 12616. Id. at 211. It also rejected plaintiffs' procedural Due Process claim, stating that "the legislative process itself provides citizens with all of the process they are due." Id. (quoting Correa-Ruiz v. Fortuño, 573 F.3d 1, 15 (1st Cir. 2009)).

each of these claims. Id. at 201-02, 208-09, 211-12.

The government did not renew its argument that plaintiffs lacked standing.

- 8 -

This appeal followed.[5]

### III. Analysis

We review the district court's grant of summary judgment de novo. Irish v. Fowler, 979 F.3d 65, 73 (1st Cir. 2020).

We first address the issue of standing, followed by the Commerce Clause, First Amendment, and Due Process arguments.

A. Standing

Federal courts have "an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." Summers v. Earth Island Inst., 555 U.S. 488, 499 (2009).

To have standing, a plaintiff must "'allege[] such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction." Id. at 493 (quoting Warth v. Seldin, 422 U.S. 490, 498-99 (1975)). "To satisfy Article III's 'personal stake' requirement vis-à-vis a statutory challenge, the plaintiff bears the burden of demonstrating that (i) she has suffered an actual or threatened injury in fact, which is (ii) fairly traceable to the statute, and (iii) can be redressed by a favorable decision." Ramírez v. Sánchez Ramos, 438 F.3d 92, 97 (1st Cir. 2006) (first citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992); and then citing Lewis v. Cont'l Bank

---

[5]    Plaintiff Club Gallístico de Puerto Rico, Inc. withdrew from this appeal after the notice of appeal was filed.

Corp., 494 U.S. 472, 477 (1990)).  "[A] plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'"  Susan B. Anthony List v. Driehaus, 573 U.S. 149, 159 (2014) (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)).

We conclude that plaintiff Ángel Manuel Ortiz-Díaz, the owner of two cockfighting venues and a breeder and owner of more than 200 gamecocks, has standing to challenge Section 12616.  Ortiz faces a credible threat of prosecution under Section 12616 because he regularly sponsors and exhibits cockfighting matches at his cockpits.[6]  The other standing requirements are clearly met.  Article III's case-or-controversy requirement is satisfied if at least one party has standing.  Bowsher v. Synar, 478 U.S. 714, 721 (1986).

We also hold that Ortiz's claims are ripe.  Ortiz's business is to sponsor and exhibit cockfights, and Section 12616

---

[6]    Although Section 12616 does not define "sponsor[ship]" or "exhibit[ion]," the government has stated that it would understand at least one of those terms to encompass Ortiz's conduct for purposes of enforcing the statute.

As to the other plaintiffs, each of them is involved in the same class of commercial activities as Ortiz.  See County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979); United States v. Poulin, 631 F.3d 17, 21 (1st Cir. 2011).

bans such activity.  Thus, there is a controversy with "sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)).

B. Commerce Clause

Plaintiffs argue that Congress exceeded its authority under the Commerce Clause in enacting Section 12616.

The Commerce Clause empowers Congress to regulate "activities that substantially affect interstate commerce." United States v. Lopez, 514 U.S. 549, 559 (1995).  This includes "purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce."  Gonzales v. Raich, 545 U.S. 1, 17 (2005).  "In assessing the scope of Congress' authority under the Commerce Clause, . . . [w]e need not determine whether [plaintiffs'] activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a 'rational basis' exists for so concluding."  Id. at 22 (quoting Lopez, 514 U.S. at 557).

> In making this inquiry, we consider four factors:
>
> (1) whether the statute regulates economic or commercial activity; (2) whether the statute contains an "express jurisdictional element" that limits the reach of its provisions; (3) whether Congress made findings regarding the

- 11 -

> regulated activity's impact on interstate
> commerce; and (4) whether "the link between
> [the regulated activity] and a substantial
> effect on interstate commerce was attenuated."

United States v. Morales-de Jesús, 372 F.3d 6, 10 (1st Cir. 2004) (alteration in original) (quoting United States v. Morrison, 529 U.S. 598, 610-12 (2000)).

As to the first factor, plaintiffs argue in passing that the statute "does not truly regulate economic or commercial activity." But, as explained by the Fourth Circuit, the AWA bans animal fights for "purposes of sport, wagering, or entertainment," all of which are "closely aligned in our culture with economics and elements of commerce." United States v. Gibert, 677 F.3d 613, 624 (4th Cir. 2012). And here, the government does not assert that the jurisdictional element, which defines the regulated activity as that "in or affecting interstate or foreign commerce," 7 U.S.C. § 2156(f)(1), would be satisfied were there no commercial aspect to a particular cockfight. Moreover, on this record, Ortiz's sponsorship and exhibition of cockfights for profit is clearly economic and commercial, as are the activities of the remaining plaintiffs.

As to the second factor, the plaintiffs argue that the "express jurisdictional element" of the AWA -- which bans all cockfighting "in or affecting interstate or foreign commerce," 7 U.S.C. § 2156(f)(1) -- is an "illusion" which does not articulate

- 12 -

a meaningful boundary between interstate and intrastate commerce. As the Supreme Court has explained, an express jurisdictional element "may establish that the enactment is in pursuance of Congress' regulation of interstate commerce," Morrison, 529 U.S. at 612, and can "ensure, through case-by-case inquiry, that the [prohibited conduct] in question affects interstate commerce," Lopez, 514 U.S. at 561. And, as we have noted above, the government does not argue that the jurisdictional element would be satisfied as to a cockfight lacking a commercial aspect. Thus, the jurisdictional element here is sufficient. See id. at 561-62.

As to the third factor, plaintiffs argue that Congress made no findings regarding the 2018 amendments' impact on interstate commerce. Plaintiffs assert that we should not look to Congress's reasons for banning animal fighting ventures in general, because they challenge only Section 12616. We disagree. Section 12616 extended the existing ban to Puerto Rico rather than creating entirely new restrictions, so earlier findings are relevant and must be considered.

Multiple congressional findings underscore the interstate commercial impact of cockfighting. Congress clarified in the AWA's "statement of policy" that the "animals and activities which are regulated under this chapter are either in interstate or foreign commerce or substantially affect such commerce or the free flow thereof." 7 U.S.C. § 2131. As pointed out by the Fourth

Circuit, the House Report discussing the 1976 amendments found that animal fighting ventures "(a) attract fighting animals and spectators from numerous states, (b) are or have been advertised in print media of nationwide circulation, and (c) often involve gambling and other 'questionable and criminal activities.'" Gibert, 677 F.3d at 625 (quoting H.R. Rep. No. 94-801, at 9 (1976), as reprinted in 1976 U.S.C.C.A.N 758, 761). Senator Maria Cantwell also noted that cockfighting can contribute to the spread of avian flus, a concern of particular importance given the present ongoing COVID-19 pandemic. See 153 Cong. Rec. S451-52 (daily ed. Jan. 11, 2007) (Statement of Sen. Cantwell).

As to the fourth factor, plaintiffs argue that Section 12616's effect on interstate commerce is incidental and attenuated. In light of the jurisdictional hook, and the nature of the plaintiffs' relationship to commercial cockfighting, in this case the effects on interstate commerce are certainly not incidental.

These factors require the conclusion that the prohibitions in the statute are about activities which substantially affect interstate commerce. We hold that Section 12616 is a legitimate exercise of the Commerce Clause power.[7]

_____

[7] As the Commerce Clause power is sufficient, we need not reach the Territorial Clause issue.

B. First Amendment

Plaintiffs argue that Section 12616 infringes on their First Amendment freedoms of speech and association. We reject both claims.

The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. Conduct "sufficiently imbued with elements of communication" is also protected under the First Amendment. Texas v. Johnson, 491 U.S. 397, 404 (1989) (quoting Spence v. Washington, 418 U.S. 405, 409 (1974)). However, conduct cannot "be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." United States v. O'Brien, 391 U.S. 367, 376 (1968). In deciding whether conduct deserves First Amendment protection, we ask both whether it was "intended to be communicative" and whether it, "in context, would reasonably be understood by the viewer to be communicative." Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 294 (1984). "It is the duty of the party seeking to engage in allegedly expressive conduct to demonstrate that the First Amendment applies to that conduct." Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 49 (1st Cir. 2005).

Plaintiffs argue that cockfighting in Puerto Rico is expressive conduct entitled to First Amendment protection. We disagree. Plaintiffs' assertion that cockfighting "express[es] their culture and deeply rooted sense of self-determination" is

insufficient to show that their sponsorship or exhibition of cockfighting "would reasonably be understood by the viewer to be communicative." Cmty. for Creative Non-Violence, 468 U.S. at 294; see also United States v. Stevens, 559 U.S. 460, 469 (2010) (recognizing "long history" of banning animal cruelty). By the same token, the O'Brien test does not apply here because plaintiffs have failed to identify any expressive element in the cockfighting activities that they engage in such that Section 12616 could be considered even an incidental burden on speech. See O'Brien, 391 U.S. at 376-77. Even had plaintiffs shown that their cockfighting activities contained some expressive element, Section 12616 is plainly permissible as an incidental restraint on such speech. See id. at 377.

Plaintiffs next argue that Section 12616 infringes on their First Amendment associational right to "peaceably . . . assemble." U.S. Const. amend. I. They argue that "the criminalization of cockfighting in Puerto Rico deters Appellants from assembling to discuss and express their views regarding cockfighting." This argument fails. Nothing in Section 12616 curtails any discussion or expression of a person's views regarding cockfighting, and this section does not restrict assembly for those purposes at all. See Knox v. Serv. Emps. Int'l Union, Local 1000, 567 U.S. 298, 309 (2012) (noting that under the Free Assembly Clause, "the ability of like-minded individuals to associate for

- 16 -

the purpose of expressing commonly held views may not be curtailed"); Holder v. Humanitarian L. Project, 561 U.S. 1, 39 (2010) (distinguishing prior free association cases that penalize "mere" or "simple" association as opposed to "the act of giving material support" (quoting Humanitarian L. Project v. Reno, 205 F.3d 1130, 1133 (9th Cir. 2000))). Section 12616 cannot be invalidated on this ground.[8]

C. Due Process

Plaintiffs next argue that the passage of Section 12616 violated their procedural and substantive Due Process rights.

Plaintiffs conceded at oral argument that they have no cognizable liberty interest at stake other than their purported First Amendment interest. That concession dooms the argument they are making. Even apart from their concession, plaintiffs have not shown that they have any cognizable liberty interest which is being infringed by these prohibitions. We reject their procedural and substantive Due Process challenges.[9] See U.S. Const. amends. V,

---

[8]     Plaintiffs' reference to the Universal Declaration of Human Rights is of no avail. "[T]he Declaration does not of its own force impose obligation as a matter of international law." Sosa v. Alvarez-Machain, 542 U.S. 692, 734 (2004); see also Medellín v. Texas, 552 U.S. 491, 504-05 (2008) (stating that non-self-executing treaties do not create domestic law).

[9]     It is still unsettled whether due process requirements apply to Puerto Rico by way of the Fifth or Fourteenth Amendment. See Tenoco Oil Co. v. Dep't of Consumer Affs., 876 F.2d 1013, 1017 n.9 (1st Cir. 1989). This is of no matter, because "the language and policies of the Due Process Clauses of the Fifth and Fourteenth Amendments are essentially the same." United States v. Neto, 659

- 17 -

XIV (protecting only against the deprivation of "life, liberty, or property, without due process of law"); Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569-70 (1972).

## IV. Conclusion

The judgment of the district court is affirmed.

---

F.3d 194, 201 n.7 (1st Cir. 2011) (internal quotation marks and citation omitted).