IN THE COURT OF APPEALS OF THE STATE OF IDAHO
**Docket No. 49496**

| | |
|---|---|
| **In the Matter of the Hospitalization of:** <br> **John Doe (2022-04).** | ) <br> ) <br> ) |
| **STATE OF IDAHO,** | ) <br> ) <br> ) **Filed: May 25, 2023** <br> ) |
| **Petitioner-Respondent,** | ) <br> ) **Melanie Gagnepain, Clerk** |
| **v.** | ) <br> ) |
| **JOHN DOE (2022-04),** | ) <br> ) |
| **Subject-Appellant.** | ) <br> ) <br> ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Gerald F. Schroeder, District Judge. Hon. James A. Schiller, Magistrate.

Appeal from decision of the district court, on intermediate appeal from the magistrate court, affirming order for commitment, <u>dismissed</u>.

Anthony R. Geddes, Ada County Public Defender; Craig Cannon, Deputy Public Defender, Boise, for appellant. Craig Cannon argued.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

---

LORELLO, Chief Judge

John Doe (2022-04) appeals from a decision of the district court, on intermediate appeal from the magistrate court, affirming an order for commitment. For the reasons stated below, we dismiss the appeal as moot.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Believing Doe was gravely disabled due to mental illness, a physician reported that Doe was found weighing approximately ninety pounds, despite being over six feet tall, "with one leg

1

swollen with maggots," and had not showered or removed his footwear in months at the direction of "voices." Subsequently, three designated examiners evaluated Doe, each certifying that schizophrenia gravely disabled Doe. Because Doe rejected hospitalization, the State filed a petition to involuntarily commit him to the custody of the Idaho Department of Health and Welfare. Following a hearing, the magistrate court entered an order involuntarily committing Doe to the Department's custody.

Doe appealed the order for commitment to the district court, arguing the magistrate court clearly erred by finding that he "refused medical treatment on a voluntary basis." Doe further argued that the magistrate court abused its discretion by refusing to allow him to make a closing argument and by not considering the "alternatives" and "exemptions" to involuntary commitment as required by statute. Approximately two weeks after Doe initiated the intermediate appeal, his involuntary commitment terminated. The district court determined that this rendered the issues Doe raised moot but concluded that the public interest exception to the mootness doctrine applied and addressed Doe's intermediate appeal on the merits. Ultimately, the district court affirmed the order for commitment, concluding that the magistrate court's unsupported finding that Doe voluntarily refused medical treatment was harmless and that Doe failed to show that the magistrate court otherwise abused its discretion. Doe again appeals.

## II.

## STANDARD OF REIVEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate court, we review the record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.2d 214, 217-18 (2013). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *Id*. Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefor, and either affirm or reverse the district court.

2

# III.

## ANALYSIS

Doe argues that the magistrate court's failure to "make a record of its reasoning" and refusal to "allow argument" violated due process. Doe further argues that the magistrate court's failure to show on the record that it considered alternatives and exemptions to involuntary commitment constitutes an abuse of discretion. The State responds that Doe's arguments are moot, unpreserved, and otherwise fail on the merits. We hold that the termination of Doe's involuntary commitment rendered the issues he raises on appeal moot. Because Doe has also failed to show that an exception to the mootness doctrine applies, we dismiss Doe's appeal.

The State argues Doe's appeal is moot because his involuntary commitment terminated before resolution of his intermediate appeal. The general rule of the mootness doctrine is that, to be justiciable, an issue must present a real and substantial controversy that is capable of resolution by a judicial decree of specific relief. *Freeman v. Idaho Dep't of Corr.*, 138 Idaho 872, 875, 71 P.3d 471, 474 (Ct. App. 2003). In the context of an appeal, if the issues presented are no longer live at the time the appellate court hears oral argument and the parties lack a legally cognizable interest in the outcome, mootness precludes appellate review. *Id.* A party lacks a legally cognizable interest in the outcome when even a favorable judicial decision would not result in relief. *Id.* An otherwise moot issue, however, remains justiciable if it falls within one of three recognized exceptions to the mootness doctrine. *Id.* Those three exceptions are:

> (1) when there is the possibility of collateral legal consequences imposed on the person raising the issue; (2) when the challenged conduct is likely to evade judicial review and thus is capable of repetition; and (3) when an otherwise moot issue raises concerns of substantial public interest.

*Ameritel Inns, Inc. v. Greater Boise Auditorium Dist.*, 141 Idaho 849, 851-52, 119 P.3d 624, 626-27 (2005). If an exception applies, this Court has the discretion to consider an appeal despite the absence of a live controversy between the litigants. *Selkirk Seed Co. v. Forney*, 134 Idaho 98, 101, 996 P.2d 798, 801 (2000). The party asserting a case is moot bears the burden of establishing mootness, and the opposing party bears the burden of showing that an exception applies. *See, e.g.*,

3

*Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010); *Ramirez v. Sanchez Ramos*, 438 F.3d 92, 100 (1st Cir. 2006).[1]

Doe does not challenge the magistrate court's finding that he is mentally ill. Rather, Doe challenges the decision to involuntarily commit him for treatment of that mental illness, arguing that alleged procedural defects relevant to that decision constitute reversible error. Because Doe's involuntary commitment has terminated, the mootness doctrine typically would bar consideration of his claims as no longer justiciable because even a favorable resolution of them could not produce any relief for him. However, Doe asserts that all three exceptions to mootness apply to this appeal. We address each exception in turn.

According to Doe, the district court correctly held that the public interest exception applies because involuntary commitments are an issue of substantial public interest. Notably, the district court concluded that the public interest exception applied to the issue of whether the magistrate court abused its discretion--not the due process issue that Doe raised for the first time in his reply brief.[2] To the contrary, the district court's decision on intermediate appeal does not address Doe's due process arguments. Regardless, we hold that the issues Doe raises do not warrant application of the public interest exception.

In support of applying the public interest exception, the district court cited *Bradshaw v. State*, 120 Idaho 429, 816 P.2d 986 (1991). In *Bradshaw*, the Idaho Supreme Court considered whether the termination of a patient's involuntary commitment rendered moot the appeal of an order for commitment. Despite holding that the appeal was moot, the opinion in *Bradshaw* concluded that "public interest concerns" "in the context of reviewing involuntary commitments" warranted review on the merits. *Id.* at 432, 816 P.2d at 989. In support of this conclusion, the

---

[1]    Idaho has adopted federal justiciability requirements. *Noh v. Cenarrusa*, 137 Idaho 798, 801, 53 P.3d 1217, 1220 (2002). Accordingly, federal cases construing those requirements are instructive when construing similar aspects of justiciability under Idaho law.

[2]    Appellate courts will not consider arguments raised for the first time in a reply brief. *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005). Because we dismiss this appeal as moot, it is unnecessary to address whether Doe properly presented his due process challenge during the intermediate appeal.

Court cited cases from other jurisdictions "recogniz[ing] the social stigma and potential collateral consequences that may accompany an involuntary commitment." *Id*.

However, *Bradshaw* does not compel a categorical application of the public interest exception to all appeals from involuntary commitment orders that are otherwise moot. Despite referencing the social stigma and potential collateral consequences of involuntary commitment, a comprehensive reading of *Bradshaw* reveals that issues beyond social stigma and potential collateral consequences warranted a review of the merits.[3] For example, the opinion in *Bradshaw* expressly indicates it would consider the issue of "whether individuals will be required to receive medication against their will while committed" to provide "future direction and guidance." *Id*. The opinion holds that a finding that a patient lacks capacity to make informed decisions about treatment requires support from clear and convincing evidence, even though the statutory scheme governing involuntary commitment does not expressly require such. *Id.* at 433, 816 P.3d at 990. Additionally, *Bradshaw* holds that a trial court cannot consider certificates by designated examiners filed with the court but not formally admitted into evidence during a commitment hearing. *Id.* Authoritative determination of these issues provides useful guidance to participants in involuntary commitment proceedings.

As indicated, an appellate court provides future direction and guidance through the authoritative determination of issues presented by parties. Appellate court review, however, is generally limited to the evidence, theories, and arguments that were presented below. *Obenchain v. McAlvain Const., Inc.*, 143 Idaho 56, 57, 137 P.3d 443, 444 (2006). This limitation is also sometimes referred to as "error preservation." Ordinarily, an appellate court will not address an issue that is not properly preserved for appeal. *In Re: SRBA Case No. 39576 Subase No. 37-00864*, 164 Idaho 241, 250, 429 P.3d 129, 138 (2018). To preserve an issue for appellate review, a party

---

[3]    To the extent *Bradshaw* holds that involuntary commitment proceedings in Idaho inherently result in social stigma, its continued validity is questionable. For a judicial decision to attach social stigma to an individual, society must be aware the decision relates to that individual. Unlike *Bradshaw*, we do not identify Doe by his actual name. Moreover, all the court records of Doe's involuntary commitment proceedings are confidential and exempt from public disclosure. *See* I.C.A.R. 32(g)(10). Some exceptions could permit disclosure of these records. *See, e.g.*, *id.* (authorizing disclosure of court records to spouse or immediate family of person subject to involuntary commitment proceedings). Despite such exceptions, the general rule of confidentiality provides some protection against social stigmatization to those subject to an order for commitment.

must raise both the issue and the party's position on the issue before the trial court. *Jones v. Lynn*, 169 Idaho 545, 552, 498 P.3d 1174, 1181 (2021). This Court need not address the applicability of an exception to the mootness doctrine if the issue was not preserved. Accordingly, we must consider whether Doe properly preserved an issue that warrants application of the public interest exception.

Doe argues that the magistrate court erred by failing to show that it considered alternatives and exemptions to involuntary commitment and violated due process by failing to "make a record of its reasoning" and refusing to "allow argument." However, Doe did not raise these issues before the magistrate court. It was not until the intermediate appeal that Doe challenged the magistrate court's decision to involuntarily commit him. Even then, Doe did not raise his due process arguments until his reply brief. Accordingly, Doe has failed to preserve the issues he presents on appeal for appellate review. *See id.*

As noted, Doe's failure to preserve the issues he raises generally precludes appellate review. Despite a party's failure to properly preserve the issue, an appellate court may review the alleged violation of an unwaived constitutional right for fundamental error in certain circumstances. *See State v. Miller*, 165 Idaho 115, 119, 443 P.3d 129, 133 (2019). However, the fundamental error doctrine is inapplicable in civil cases. *Ballard v. Kerr*, 160 Idaho 674, 711, 378 P.3d 464, 501 (2016). Even assuming that the loss of liberty associated with an involuntary commitment is sufficient to warrant application of the fundamental error doctrine in this civil proceeding, Doe has not cited the fundamental error standard in his briefs or otherwise argued that the errors he alleges constitute fundamental error. Because Doe has failed to address the factors this Court considers when reviewing a case for fundamental error, he has waived any fundamental error argument relating to the issues he raises on appeal. *See State v. Jeske*, 164 Idaho 862, 869-70, 436 P.3d 683, 690-91 (2019).

In sum, Doe failed to preserve the issues he raises for review on appeal and waived any fundamental error claim relating to the magistrate court's order for commitment. Consequently, this Court cannot review the issues Doe raises to provide future direction and guidance for involuntary commitment proceedings. Accordingly, Doe has failed to show that the public interest exception applies to his appeal.

Similarly, Doe has failed to show that the collateral consequences exception applies. To support application of this exception, Doe argues only that he "still suffers from a collateral consequence: infringement on his [S]econd [A]mendment rights which came about because of the commitment." However, Doe does not support this conclusory assertion in his briefs with relevant legal authority or cogent argument.[4] A party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997). Consequently, Doe has waived the Second Amendment issue he raises. Accordingly, he has failed to show that the collateral consequences exception applies to his appeal.

Doe has also failed to show the issues he presents are not moot because they are capable of repetition, yet evading review. For this exception to mootness to apply, the following circumstances must simultaneously exist: (1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). Under the second prong, there must be a "demonstrated probability" or "reasonable expectation," not merely a possibility, that the complaining party will be subject to the same action. The actions at issue in this case are the magistrate court's alleged failure to "make a record of its reasoning" showing that it considered alternatives and exemptions to involuntary commitment and its refusal to allow closing argument.

---

[4] During oral argument, Doe asserted that the notation in the order for commitment that Doe "is a person to whom the provisions of 18 U.S.C. 922(d)(4) and (g)(4) apply" shows that he still suffers a collateral consequence of his involuntary commitment. Even if this belated reference to federal law during oral argument could satisfy Doe's obligation to cite supporting legal authority, he did not provide cogent argument applying the cited authority. More importantly, it is not clear that Doe's challenge to the order for commitment would bring him outside the ambit of either 18 U.S.C. § 922(d)(4) or (g)(4). Both statutes apply to those who have "been adjudicated as a mental defective or who [have] been committed to a mental institution." 18 U.S.C. §§ 922(d)(4), (g)(4). As noted, Doe does not challenge the magistrate court's finding that he is mentally ill, gravely disabled, and lacks "the capacity to make informed decisions about his treatment." Accordingly, federal law may still restrict Doe's Second Amendment rights as a person who has been adjudicated as a mental defective even if the order for commitment is reversed. *See* 27 C.F.R. § 478.11(a) (defining "adjudicated as a mental defective" to mean "a determination by a court . . . that a person, as a result of . . . mental illness . . . [l]acks the mental capacity to contract or manage his own affairs").

7

According to Doe, "a legal issue stemming from a mental commitment is generally capable [of] repetition, yet evades review based on the short timeline." Involuntary commitment procedures are short-natured.[5] However, Doe has not established a demonstrated probability or reasonable expectation the alleged errors identified above will reoccur. The record does not indicate that Doe has been previously subject to involuntary commitment proceedings. Nor is there evidence that errors similar to those he alleges occurred below have arisen in other cases. At most, Doe has shown that there is an opportunity for the alleged procedural defects to occur in the future. This is insufficient, by itself, to justify application of the capable of repetition, yet evading review exception.

## IV.

## CONCLUSION

Doe's involuntary commitment has terminated, rendering the issues he raises on appeal moot. Doe has failed to show that any exception to the mootness doctrine applies. Accordingly, Doe's appeal is dismissed.

Judge HUSKEY and Judge Pro Tem MELANSON, **CONCUR**.

---

[5] Upon the filing of a petition for involuntary commitment, the trial court has forty-eight hours to appoint a second designated examiner and, after that appointment, both designated examiners have seventy-two hours to report their findings. I.C. § 66-329(4). The trial court then has seven days to conduct a hearing on the matter or up to an additional seven days for good cause shown. I.C. § 66-329(6). If the proposed patient meets certain statutory criteria, the trial court "shall order the proposed patient committed to the custody" of the director of the Idaho Department of Health and Welfare for up to a year. I.C. § 66-329(11).