**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51581**

| | | |
|---|---|---|
| In the Interest of:  Jane Doe I, John Doe I, and Jane Doe II, Children Under Eighteen (18) Years of Age. | ) ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | **Filed:  July 18, 2024** |
| Petitioner-Respondent, | ) ) | **Melanie Gagnepain, Clerk** |
| v. | ) ) | |
| JANE DOE (2024-06), | ) ) | |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County.  Hon. Benjamin D. Harmer, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Benjamin P. Anderson, Twin Falls County Public Defender; Adam Ondo, Deputy Public Defender, Twin Falls, for appellant.

Hon. Raúl R. Labrador, Attorney General; James T. Baird, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Jane Doe (Doe) appeals from the magistrate court's judgment terminating her parental rights to her children, Jane Doe I, Jane Doe II, and John Doe I (Children).  Doe argues the magistrate court erred in finding she neglected Children.  The magistrate court's judgment terminating Doe's parental rights is affirmed.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Doe is the mother of Children.  The Idaho Department of Health and Welfare (Department) received a report that Children were suffering from abuse and neglect.  The Department attempted to work informally with Doe, but that attempt was unsuccessful.  Pursuant to the Child Protective

1

Act, Children were placed in the custody of the Department and a case plan was ordered. The case plan was filed October 8, 2021, and delineated the tasks Doe was required to successfully complete to reunify with Children. Following a hearing, which Doe attended, the magistrate court approved and adopted the case plan, excepting some typographical errors, which the court ordered corrected. The amended case plan ordered by the court was filed October 22, 2021, and considered reunification as the primary goal.

Based on Doe's lack of progress on the case plan, the primary goal was eventually changed from reunification to termination of Doe's parental rights and adoption of Children. After multiple review hearings, all of which Doe attended, the Department filed a petition to terminate Doe's parental rights to Children. Following a hearing, the magistrate court found that Doe had neglected Children, and it is in Children's best interests to terminate Doe's parental rights. Doe appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

On appeal, Doe argues there was insufficient evidence that she: (1) had notice of the case plan tasks; (2) failed to protect and feed her children; and (3) neglected her children. The Department argues the evidentiary burden was satisfied as to each argument.

A parent has a fundamental liberty interest in maintaining a relationship with his child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code § 16-2005(1) permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

3

**A.     Neglect**

Doe argues there was insufficient evidence that Doe neglected Children pursuant to I.C. § 16-1602(31)(a).  The Department argues there was sufficient evidence presented.

**1.     Notice**

Doe makes two arguments regarding the case plan.  First, she argues the copy of the case plan admitted as State's Exhibit 1 is not signed or file stamped and, therefore, there is no evidence that State's Exhibit 1 was the court-ordered case plan.  Second, Doe argues she did not have notice of the contents of the case plan.

State's Exhibit 1, which was admitted without objection at the termination trial, is a copy of the case plan, parts 1 and 2.  Case plan part 1 identified the steps Doe needed to successfully complete in order to reunify with Children.  Doe argues that this case plan was not signed by Doe, was not file-stamped by the clerk, and did not contain a certificate of service or otherwise indicate Doe had been served a copy of it.  This argument was rejected by the magistrate court.  The court held that Doe stipulated to the court taking judicial notice of the hearing wherein the terms of the case plan were modified,[1] a Department witness testified that the case plan offered was the same case plan ordered by the court, both the Guardian Ad Litem (GAL) and one of Doe's caseworkers discussed the contents of the case plan with Doe on several occasions, and Doe discussed the case plan with her case manager but Doe declined to provide a copy of the case plan to her case

---

[1]     Doe takes issue with the magistrate court's conclusion that the magistrate court took judicial notice of the hearing wherein the terms of the case plan were modified.  Doe argues that instead, the court only took judicial notice of the order modifying case plan, which does not identify the tasks of the case plan.  We find this disingenuous.  For context, Doe stipulated in a document entitled, "Stipulation to Take Judicial Notice of Hearing and Order," that the court could:

> take judicial notice, for purposes of making its findings of fact and conclusions of law in the termination of parental rights proceedings, that a motion hearing on [Doe's] motion to modify case plan was held on December 29, 2022, and the Court entered an order modifying case plan on January 4, 2023.  The Court may further take judicial notice of the contents of the order modifying case plan.

The order modifying case plan indicates that a hearing on the case plan was held on December 29, 2022, and that Task 1N was modified but Task 1F would remain as worded.  The court entered an order captioned, "Order to Take Judicial Notice of Hearing and Order" taking judicial notice of the "order on the case plan hearing, which was conducted on December 29, 2022," and based on the stipulation, that it could be relied upon by the magistrate court.

It is clear from the context of the stipulation, including the heading on both the motion and subsequent order, that the parties and court intended for the court to take judicial notice of the substance of the hearing and the order memorializing what occurred during the hearing.

4

manager. Based on that evidence, the magistrate court found as a matter of fact that Doe was provided notice of the case plan and the tasks therein.

Doe argues that in order to be a case plan as defined by the statute, the case plan must be one ordered by the Court. The magistrate court's factual finding that State's Exhibit 1, a copy of the case plan, is the same as the case plan ordered in the case is supported by clear and convincing evidence. The first court-ordered case plan was filed October 8, 2021. The corrected court-ordered case plan was filed October 22, 2021. At the termination trial, the State moved to admit State's Exhibit 1, which is a copy of the case plan; Doe did not object. The Department's caseworker testified that State's Exhibit 1 is a copy of the case plan for the parents of Children; Doe did not object. Another witness, the Court-Appointed Special Advocate volunteer, testified that State's Exhibit 1 is the case plan that was ordered. At the termination hearing, the magistrate court took judicial notice of the Order Modifying Case Plan. Thus, the record provides clear and convincing evidence supporting the magistrate court's conclusion that State's Exhibit 1 is a copy of the court-ordered case plan.

Next, Doe argues the Department failed to establish the "implied element" that Doe had knowledge of the case plan that was admitted as State's Exhibit 1. Doe cites several cases to support her contention that knowledge of the case plan is an implied element the Department must establish in order to show Doe failed to comply with the case plan as a basis for neglect. The magistrate court found that Doe had notice and knowledge of the case plan and its contents. We need not address whether knowledge is an implied element because, in this case, there is clear and convincing evidence that Doe had actual knowledge of the case plan and the tasks she needed to complete in order to reunify with Children.

Doe stipulated in the Child Protective Act (CPA) case to the Department's custody of Children. Challenges to circumstances arising in the Child Protective Act are irrelevant to termination proceedings. *Idaho Dep't of Health & Welfare v. Doe*, 161 Idaho 754, 758, 390 P.3d 1281, 1285 (2017) (rejecting Mother's argument that case plans were invalid, in part, because Mother never objected when case plans were entered in CPA case); *Idaho Dep't of Health & Welfare v. Doe (2016-11)*, 160 Idaho 824, 834, 379 P.3d 1094, 1104 (2016) (noting that inquiry into reunification efforts is not relevant for court to terminate parental rights). If Doe had concerns or issues regarding the terms of the case plan, those concerns needed to be raised in the CPA case,

not the termination case. Doe's failure to challenge the validity of the case plan or her knowledge of the case plan tasks in the CPA case precludes our review in the termination case.

Even if Doe had preserved a challenge to the case plan, the magistrate court found that both the GAL and a caseworker discussed the details of the case plan with Doe when they feared Doe would not be able to complete the case plan and that Doe discussed the case plan with her case manager but declined to provide a copy. These findings are supported by clear and convincing evidence.

The record indicates that Doe was present and stipulated to the Department having custody of Children at the adjudicatory hearing on September 23, 2021, and she was aware a case plan was ordered. The case plan was filed October 8, 2021, and delineated the tasks Doe was required to successfully complete to reunify with Children. On October 14, 2021, the magistrate court held a hearing, at which the case plan was discussed; Doe was present. At that hearing, corrections and changes were made to the case plan and the court indicated it would adopt the case plan. Thereafter, after discussing the corrections and changes, the minutes indicate the last thing the magistrate court did was "inquire of [Doe]" and "[Doe] responds." The minutes then reflect that the case plan was filed, and the court approved the case plan with the exception of the typographical errors. The court issued an order adopting the case plan and incorporating by reference the case plan into the order. The corrected, court-ordered and court-approved case plan was filed on October 22, 2021. The certificate of service indicates a copy of the proposed case plan and the corrected court-approved case plan were served on Doe's counsel. Pursuant to Idaho Rule of Civil Procedure 5(b)(1), "If a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party." Here, Doe's counsel was served with copies of both the proposed and court-ordered case plan so Doe was served through her attorney. Additionally, Doe had actual knowledge of the case plan tasks.

As noted above, Doe was present when the case plan was presented, corrected, approved, and adopted. In addition to that hearing, Doe was present and made comments during the review hearing on January 6, 2022. At that hearing, the Department moved to update the case plan, Doe responded, and the court granted the motion to modify, which included additional tasks for Doe; accordingly, Doe clearly had notice and knowledge of the modifications as she was present when they were announced. The modified case plan was incorporated by reference into the order, and the order was served on Doe's counsel.

6

Another review hearing was held March 31, 2022; Doe attended, and the court spoke with her. The court added an additional task for Doe, incorporated the amended case plan into the order, and the order was served on Doe's counsel. A review hearing was held June 23, 2022; Doe was present. At that hearing, the magistrate court ordered that the Department to schedule an extended home visit between Doe and Children. The court entered an order, incorporated the case plan by reference, and Doe's counsel was served a copy of the order. The same occurred on August 25, 2022, with the court approving extended home visits, entering an order, incorporating by reference the case plan into the order, and serving Doe's counsel with a copy. At no point in any of the above proceedings did Doe claim she had no knowledge of, or was unclear about, the terms of the case plan. In fact, in each of the hearings, at least one task, if not more, was discussed and Doe was present for that discussion; thus, there is clear and convincing evidence in the record to support the magistrate court's conclusion that Doe had knowledge of the case plan and the tasks she was required to complete in order to successfully reunify with Children.

Moreover, we disagree with Doe's statement that "at the conclusion of the trial, the record was totally devoid of proof that [Doe] had knowledge of each particular task and whether each was formally ordered by the court." As noted above, all tasks had been formally ordered by the court, various witnesses testified that the case plan admitted as Exhibit 1 was identical to the court-ordered case plan, and the court-ordered case plan was discussed with Doe. At the termination trial, the caseworker testified about each task Doe was supposed to complete in the case plan and conversations the caseworker had with Doe about those requirements. For example, the first task required Doe to provide safe, stable, sanitary, and drug-free housing for Children. However, in March 2023, Doe became homeless, "couch-surfed" for several months, and ultimately moved to Utah. The caseworker testified that she discussed the housing requirement with Doe, and that once Doe lost her housing, Doe was not able to provide information about the individuals with whom she was staying.

The second task required Doe to permit random and scheduled home visits. The caseworker testified that she provided various home visits until Doe lost her housing and that, at times thereafter, Doe would not provide the address where she was staying. The third task required Doe to ensure that all individuals in the home are approved by the Department prior to moving in; Doe did not comply. The next task required that Doe demonstrate the ability to financially provide for Children's needs. Doe was employed through April 2023, then obtained another job, but was

not getting enough hours and was having financial struggles. She stopped working that job and continued to have financial struggles until the time of the termination hearing. Doe notified the Department that she lost her job, and she provided intermittent updates on her job search. The fifth task required Doe to notify the Department of any changes in various circumstances. The caseworker testified Doe was "pretty good" about keeping the Department up-to-date when she lost her job and got evicted. The fourth task required Doe to demonstrate increased parenting skills and, to that end, Doe was required to enroll in and complete a parenting class. Doe successfully completed the class but because Doe did not retain the information and apply the parenting skills and there were concerns about whether someone else had done the workbook assignments for her, Doe was required to take the class a second time. Doe failed the class the second time. Doe was required to complete a mental health assessment and engage in counseling. Doe completed the assessment and attended some counseling, although she failed to make progress in counseling. In terms of visitation, when Doe moved to Utah, the caseworker told Doe that visitation with Children would be difficult, but Doe went ahead with the move.

Thus, the testimony demonstrates that Doe had knowledge of the tasks required by her case plan because she was present when the tasks were initially ordered, and she discussed the tasks with her various caseworkers throughout the case. Doe's compliance with various requirements, like completing a parenting class and a mental health evaluation, informing the Department regarding her change in circumstances, and declining to allow the Department to inspect her living situations, demonstrate that Doe understood the relevant case plan tasks she was required to complete in order to reunify with Children. The testimony regarding Doe's actions undercuts her argument that there was insufficient evidence presented that Doe did not know what tasks she needed to complete to reunify with Children. There is clear and convincing evidence to support the magistrate court's conclusion that Doe had knowledge of the case plan.

### 2.    Failing to meet the needs of Children

Next, Doe argues there is insufficient evidence to support the magistrate court's finding that Doe failed to protect Children, failed to feed Children, and failed to meet the needs of Children. The magistrate court found that Doe did not or could not protect Children from the abusive actions of her partner, Steven.

The testimony at trial established that the Department was aware of allegations of abuse by Steven. Doe argues that no abuse was ever proven and, thus, there was no basis to find Doe

neglected Children by failing to protect them from Steven. Doe misunderstands the quantum of proof required to establish neglect. The Supreme Court has repeatedly held that allegations of abuse are sufficient for a finding of neglect. *See In the Interest of the Doe Children v. John Doe and Jane Doe*, 163 Idaho 367, 413 P.3d 767 (2018) (mother's inability to protect her children based on allegations of abuse was substantial and competent evidence that mother neglected children); *Castro v. Idaho Department of Health and Welfare*, 102 Idaho 218, 628 P.2d 1052 (1981) (father's parental rights terminated based on allegations of abuse with substantiated injuries); *In the Interest of John Doe I and John Doe II v. State Department of Health and Welfare*, 122 Idaho 644, 837 P.2d 319 (Ct. App. 1982) (rejecting argument that parental rights may only be terminated upon finding, among other options, affirmative abuse with substantiated physical or emotional harm to child).

Moreover, in addition to the allegations of abuse by Steven, the magistrate court found that the testimony at the termination trial established that Steven "picked on" Doe's son, was planning to show Children pornography as a means to provide education on sexuality (as he had done with his minor niece and nephew), and roughhoused inappropriately with Children. Steven also had a clear hierarchy of favorites regarding Children. Doe did not identify any of these behaviors as inappropriate or attempt to stop or change Steven's behavior, instead relying on Steven to help parent Children. Although Doe argues there is no evidence that Steven was physically violent with Children, on appeal, she fails to address the other instances of Steven's inappropriate behavior from which Doe needed to demonstrate the ability to protect her children. Where a lower court makes a ruling based on two alternative grounds and only one of those grounds is challenged on appeal, the appellate court must affirm on the uncontested basis. *Schmidt v. Huston*, 167 Idaho 320, 325, 470 P.3d 1129, 1134 (2016). Consequently, the factual finding that Steven bullied Doe's son, inappropriately roughhoused with Children, and planned to show Children pornography established that the magistrate court's factual finding that Doe failed to protect Children from Steven is supported by clear and convincing evidence.

The magistrate court also found Doe could not provide for Children's needs. First, the court noted that Doe could not provide for the financial needs of Children as she had lost her job and been unemployed for quite some time up to and including the time of the termination trial. Doe argues that she supported Children because, on one instance, on each child's birthday, she

provided a gift for that each child. To the extent Doe argues providing one birthday gift is evidence of financial support over a two-year period, we disagree.

The magistrate court also noted that although Doe had food and housing at the beginning of the case, the food was insufficient. Similarly, the magistrate court considered Doe's inability to meet Children's housing needs. At the time of the termination trial, Doe had been evicted from her home and after couch-surfing for a period of time, she was living in a trailer home behind Steven's mother's house in Utah, which Doe admitted was unsuitable for Children. Based on Doe's testimony, she failed to provide a safe, stable, and sanitary home for Children.

Finally, the magistrate court addressed Doe's inability to meet the emotional needs of her children as evidenced by the lack of Doe's successful completion of family therapy or showing she could attentively engage with Children. This lack of appropriate interaction evidenced itself in the numerous instances of unhealthy interactions with Children, as well as numerous instances of unhealthy non-interaction with Children during visits.

Doe argues the Department did not sufficiently plead "actual neglect" as failing to provide for the needs of Children because the term "needs" was not specified in the termination petition. Doe filed an answer to the petition and raised the affirmative defenses of estoppel, quasi-estoppel, impossibility, void for vagueness, violation of procedural due process rights, violation of substantive due process rights, and violation of the Equal Protection Clause. Doe raised no challenges that the petition to terminate her parental rights was insufficiently pled in the magistrate court. Moreover, the defenses of impossibility, void for vagueness, violation of her due process rights, and violation of the Equal Protection Clause all related to the case plan, not to the petition to terminate parental rights.

> Under the Idaho Rules of Civil Procedure for pleadings, "[e]ach allegation must be simple, concise, and direct. No technical form is required." I.R.C.P. 8(d)(1). These rules comport with Idaho's notice-pleading requirement, which requires a pleading to put the adverse party "on notice of the claims brought against it." *Hodge for & on behalf of Welch v. Waggoner*, 164 Idaho 89, 96, 425 P.3d 1232, 1239 (2018) (citation omitted). Accordingly, notice pleading requires the complaint to provide "some indication" of the basis for relief, but not always an exact statutory basis or formal cause of action. *Brown v. City of Pocatello*, 148 Idaho 802, 807, 229 P.3d 1164, 1169 (2010).

*Fulfer v. Sorrento Lactalis, Inc.*, 171 Idaho 296, 301, 520 P.3d 708, 713 (2022). While there are some exceptions when heightened pleading requirements are imposed by rule or statute, Doe cites no such rule or statute in this case. Thus, we will assess whether the Department's petition to

terminate sufficiently notified Doe of neglect as a statutory basis for the termination of her parental rights.

The motion and petition for termination of parental rights sought termination on the grounds that Doe neglected Children by "not providing for the needs of the children and did not protect the children from abuse by [Steven]." It also asserted that the neglect "continued in part due to [Doe's] failure to complete her case plan including completing parenting classes, mental health treatment and family therapy with her children." It further alleged that Doe had "not shown that she can meet the needs of her children or provide[] for their support and necessities." This was sufficiently clear to identify to Doe that there were multiple bases upon which the Department alleged Doe neglected her children.

In addition to Doe's failure to allege any pleading deficiencies in the petition to terminate in the magistrate court, Doe provides no authority to support her distinction and definition of "actual neglect" as something different than neglect by failing to meet the emotional needs of Children. This Court generally does not address issues not supported by cogent argument and citation to legal authority, even in a case terminating parental rights. *Idaho Dep't of Health & Welfare v. Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018). Thus, we decline to consider Doe's argument as it relates to a definition of "actual" neglect. But even if addressed on the merits, clear and convincing evidence supports each of the magistrate court's findings.

### 3. Failing to successfully complete the case plan

The magistrate court found that Doe neglected Children by failing to complete the case plan and reunify with Children in the statutory time period. The magistrate court's findings are supported by clear and convincing evidence.

Doe makes several preliminary challenges to the case plan. First, she challenges two tasks as unconstitutionally vague. After the petition was filed, Doe filed a motion to modify the case plan pursuant to Idaho Juvenile Rule 47, alleging Task 1F should be amended "to make it less subjective, vague, and ambiguous." Task 1F required: "[Doe] will participate in and complete a DHW approved parenting course to learn alternative disciplinary practices and become more educated regarding appropriate parenting practices. [Doe] will demonstrate increased parenting skills in her interactions and overall relationship with her children." Doe also asked that task 1N be modified to "clarify that she only need to obtain a drug and alcohol assessment if she were to test positive." Doe asserted Task 1F was vague or subjective because, according to Doe, she

successfully completed a parenting class before failing the same class. Doe asserted that in order to remedy what she believes is too vague is to remove the requirement that "[Doe] will demonstrate increased parenting skills in her interactions and overall relationship with her children." She further argued that a finding that she failed to comply with a "vague" order violates her Fifth and Fourteenth Amendment procedural due process rights. As the magistrate court found that Doe completed those tasks, her argument is moot.

> The general rule of the mootness doctrine is that, to be justiciable, an issue must present a real and substantial controversy that is capable of resolution by a judicial decree of specific relief. In the context of an appeal, if the issues presented are no longer live at the time the appellate court hears oral argument and the parties lack a legally cognizable interest in the outcome, mootness precludes appellate review. A party lacks a legally cognizable interest in the outcome when even a favorable judicial decision would not result in relief.

*State v. John Doe* (2022-04), 172 Idaho 386, 389, 533 P.3d 295, 298 (Ct. App. 2023) (internal citations omitted). Because the magistrate court found that Doe completed the tasks, there is no ruling of this Court that would provide different relief, and we need not address this argument any further.

Second, Doe asserts that her parental rights cannot be terminated for minor case plan violations because the Idaho Legislature cannot define neglect in any way other than the way the federal government has defined "unfitness." This is because, according to Doe, "the legislature has no right to re-define neglect to include things that would not meet the plain language definition of neglect, and thus be justified for purposes of the Fourteenth Amendment." Doe argues that the only basis for terminating parental rights under the federal constitution is a finding that the parent is "unfit," and that any state definition of neglect must comport with what the United States Supreme Court would consider unfit. Further, Doe argues, "the Idaho Legislature has no right to define 'unfitness' in a manner that is inconsistent with the common understanding of the term as utilized by federal courts."

Doe uses the above statements as the foundation for her generalized argument that failing to complete certain case plan tasks, like the failure to report a housing change within twenty-four hours, have no bearing on the safety and well-being of Children; thus, such failures cannot be a basis on which to find neglect and ultimately, terminate parental rights. Doe then applies both the foundation and analysis to her case to argue that, for example, her failure to engage in counseling

12

is not indicative of unfitness because there was no evidence showing how the failure to engage in counseling rendered Doe unfit.

We decline to address Doe's constitutional claims for several reasons, not the least of which is Doe's failure to provide a standard of review by which a constitutional challenge is to be reviewed or explain why the magistrate court's constitutional analysis was erroneous. Failing to provide and apply the relevant standard of review is fatal to Doe's claim. We do not generally address issues not supported by cogent argument and citation to legal authority, even in a case terminating parental rights. *Doe (2018-24)*, 164 Idaho at 147, 426 P.3d at 1247. Doe similarly fails to provide any authority supporting her proposition that the Idaho Legislature is without authority to define neglect or that the definition set forth in I.C. § 16-2002(3)(a) and (b) is inconsistent with the relevant federal statutes[2] governing the termination of parental rights. Doe's citation to cases that are prior to the implementation of the federal statutes governing proceedings relating to the termination of parental rights is similarly unhelpful. Doe's statement that "it is problematic to permit magistrate courts to define neglect in whatever manner they wish in any given Child Protective Act case," is irrelevant and unsupported by the record. The record in this case clearly demonstrates that the magistrate court applied the statutory definition of neglect and did not engage in some kind of ad hoc subjective determination of what should or should not constitute neglect.

Finally, The Idaho Supreme Court has held:

> The standard for termination of parental rights is not parental fitness per se, but whether the evidence shows that one of the statutory grounds for termination has been met and that termination of parental rights would be in the child's best interests. *See* I.C. § 16-2005(1). This statute allows for termination of parental rights not only when a parent is unable to provide a minimum level of care (*see, e.g.*, section 16-2005(1)(d)), but also when a parent is able to provide a minimum level of care but, for whatever reason, fails to do so (*see, e.g.*, section 16-2005(1)(b)).

---

[2]    In the Adoption Assistance and Child Welfare Act of 1980, Congress established conditions for states to comply with in order to receive federal funding relating to foster parenting programs and adoptions. For example, 42 U.S.C.A. § 675E provides: "in the case of a child who has been in foster care under the responsibility of the State for 15 of the most recent 22 months . . . the State shall file a petition to terminate the parental rights of the child's parents."

*Matter of Doe I*, 166 Idaho 86, 90, 454 P.3d 1169, 1173 (2019).

Doe next argues two of the tasks--financial support and adequate housing--were impossible to complete. Doe argues it is impossible for her to maintain a legal form of income or support because she was terminated from employment and since March of 2023, she has been unable to find employment. The magistrate court found that Doe was employed at the beginning of the CPA case but was fired from that job and never obtained employment thereafter. The court concluded that because Doe was capable of work and had worked during the CPA case, it was not impossible for Doe to work. The magistrate court's conclusion that Doe's unwillingness or inability to obtain employment or some other source of sufficient financial support for Children was not impossible and is supported by clear and convincing evidence.

Doe next argues that it was impossible for her to provide adequate housing because, according to her caseworker, the waiting list for access to public housing is more than two years. The magistrate court rejected this argument, providing a detailed list of all the places Doe lived once she was evicted from her initial housing, including couch-surfing with friends and strangers for months, staying at a motel, moving to Utah to live with a male even though she acknowledged she did not know him well, and ultimately living in a trailer behind Steven's mother's house. The district court also noted that the case manager, the GAL, and the caseworker all testified that they offered to assist Doe in seeking subsidized housing in Twin Falls, but Doe declined to apply. The magistrate specifically noted that, regardless of the length of time a person must wait to access subsidized housing, Doe had not utilized other options to obtain housing.

On appeal, Doe takes issue with this reasoning, arguing that even if she had accepted the offers of assistance, she still would have had to wait approximately two years to obtain housing. The record does not support this assertion. While the caseworker testified the *average* wait for public housing in Twin Falls is two years, Doe does not provide any evidence that *she applied for public housing and that she, specifically*, had a two-year wait. Doe's failure to provide any evidence that she specifically, as opposed to people generally, had to wait two years for housing, means she has not established it was impossible for her to provide safe and stable housing for Children. As a result, clear and convincing evidence supports the magistrate court's factual findings and legal conclusions regarding Doe's failure to provide financial support and adequate housing pursuant to her case plan.

14

Given the above, we now turn to whether the magistrate court's finding that Doe neglected Children by failing to complete her case plan is supported by clear and convincing evidence. It is. The court found that Doe failed to complete several tasks on her case plan. The magistrate court listed each task in the case plan and identified, with detailed reference to evidence from the termination trial, whether Doe completed the task. The court found that Doe failed to obtain safe, stable, sanitary, and drug-free housing; failed to allow random and scheduled home visits consistently throughout the case; did not ensure that all individuals in the home were approved by the Department prior to moving in; did not demonstrate the ability to financially provide for Children's needs through legal forms of income/support; partially complied with notifying the Department of changes in various life circumstances; completed a Department approved parenting class but completion of the class did not resolve all the concerns related to the task; failed to complete family therapy; completed a mental health assessment and engaged in counseling, although the counseling did not accomplish much; completed the necessary releases of information and other forms; partially completed the task requiring her to maintain contact with the Department to ensure all of Children's needs are met; and the magistrate court found other tasks either met or moot. The court declined to assess Doe's attendance (or lack thereof) at various appointments against Doe.

The magistrate court's factual findings are supported by clear and convincing evidence. The evidence at trial established that Doe missed twenty-four of sixty-five scheduled visits with Children. One of the caseworkers testified, and the magistrate court found, that although the case worker "prompted and prodded" Doe to apply lessons from the parenting classes to interactions with Children, tried to encourage interaction, and tried to provide individual suggestions, after working with Doe for a year, the caseworker saw no progression in Doe's ability to parent. As another example, the magistrate court referenced the visitation notes in Exhibit B to conclude that, although Doe had weekly visits of two hours, she rarely engaged for the full two hours with Children. Instead, Doe would sit and watch Children for an hour or more without engaging with them. Doe had so little interaction with Children that the Department required her to greet Children when they arrived for visits and to say goodbye to them when they left. Despite that specific instruction, Doe did not do so consistently.

As additional evidence that Doe could not appropriately parent her children, a therapist provided parent-child interaction therapy for Doe and her son. The therapy required daily visits

and daily homework. At the first visit, the therapist testified she would obtain a baseline assessment of the parent-child interaction and then identify areas to work on together. The therapist then coached Doe during visits with the child via an earbud and a one-way mirror. Initially, the therapist noticed Doe had "real difficulties" interacting with her son. On the first meeting, Doe had no reaction to her son's greeting, chose to sit in a chair, dozed off, and then moved away from son and just watched as he played alone. The next visit, Doe was "ambivalent" towards her son and did not try to interact with him. The therapist modeled appropriate play interaction for Doe and tried to talk Doe through how to interact with her son. Doe's affect was flat and when her son tried to engage with her by rolling a car toward her, Doe indicated she was too tired to pick up the car, and the son ended up retrieving the car. Doe cancelled the next two visits and, noticing no improvement in Doe's parenting and because of the cancellations, the therapist terminated the therapy.

The magistrate court also found the Department tried a different kind of therapy through another therapist. This therapy was designed to build a bond between Doe and her son. This therapy was also unsuccessful as Doe again was unwilling to incorporate therapist's specific suggestions. After five months, the therapist contacted the Department and recommended terminating the therapy as Doe had shown no improvement in establishing a healthy bond with her son. The therapist testified that she never saw Doe hug or express love for her son.

Finally, the magistrate court referenced the GAL's testimony that Doe consistently ignored the needs of Children, including Children's request to use the restroom, to focus on her own needs. The GAL testified that she would encourage Doe to focus on one specific parenting skill during the two-hour visit, but Doe was unable to do so, and Doe's attention level waned over each visit.

The magistrate court also found that, at times, Doe did things well, like providing nutritious food when Children went on home visits. She also made some minor parenting improvements, like yelling at the kids in a lower volume. However, despite some small improvements, Doe was unable to complete all the case plan tasks necessary for reunification within the statutory time period. As evidenced by Doe's decision to move out of state during the pendency of the case, even after her caseworker told her it would be difficult to complete the case plan tasks, Doe was more focused on her own needs than those of Children. At the time of the termination trial, Doe could not financially support Children, had no suitable housing for Children, and had failed to complete

the necessary therapy to establish healthy bonds with Children. As such, there is clear and convincing evidence that Doe neglected Children by failing to complete the case plan.

## B. Best Interests of the Children

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of Children to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in Children's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to Children's care after Children are placed in protective custody, the improvement of Children while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of Children to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court found that terminating Doe's parental rights is in the best interests of Children because, at the time of the termination trial, Doe could not provide safe and stable housing, was unemployed, and could not meet Children's needs. Doe does not challenge the legal conclusion regarding the best interests of Children. As a result, we affirm the magistrate court's finding that termination of Doe's parental rights is in the best interests of Children.

### IV.

### CONCLUSION

Clear and convincing evidence supports the magistrate court's conclusion that Doe neglected Children and that termination of Doe's parental rights is in the best interests of Children. The judgment terminating Doe's parental rights is affirmed.

Chief Judge GRATTON and Judge LORELLO, **CONCUR**.